UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL GRESHAM, #272603, | Case No. 2:16-cv-00071 |
| Plaintiff, | Hon. Paul L. Maloney<br>U.S. District Judge |
| v. | |
| PAMELA AUSTIN, et al., | |
| Defendants. | |
| _____/ | |

## REPORT AND RECOMMENDATION

### I.  Introduction

This is a civil rights action brought by state prisoner Michael Gresham pursuant to 42 U.S.C. § 1983.  Gresham alleges that the Defendants conspired to retaliate against him in violation of the First Amendment, used excessive force against him in violation of the Eighth Amendment, and subjected him to cruel and unusual punishment also in violation Eighth Amendment.  (ECF No. 1.)  These violations arise out of an alleged denial of necessary dental care.  (*Id.*)

All remaining Defendants – Doctor Austin, Corrections Officer (CO) Lese, Dental Assistant Eagle, CO Smith, Resident Unit Manager (RUM) Neimisto, Warden Napel, Deputy Warden Alexander, and Rourke – have moved for summary judgment asserting that Gresham has failed to exhaust his administrative remedies.[1] (ECF

---

[1]  On September 6, 2018, the Court dismissed Grievance Coordinator Caron from the case.  (ECF No. 28.)

Nos. 40 and 41.) Gresham has filed a response. (ECF No. 43.) Defendants then replied (ECF No. 43), and Gresham filed a surreply. (ECF No. 44). The undersigned has reviewed these pleadings and associated documents, and respectfully recommends that the Court (1) grant Defendants' motion for summary judgment and (2) dismiss Gresham's remaining claims.

## II.  Summary of Plaintiff's Allegations and Relevant Facts

At their core, Gresham's claims revolve around his perceived lack of necessary dental care while detained at the Marquette Branch Prison (MBP).

Gresham states that, on April 6, 2013, he filed medical kites regarding the significant pain in his mouth.[2] (ECF No. 1, PageID.3.) In response, Lese and Smith allegedly came to Gresham to inform him that they would prevent him from ever getting his teeth fixed because Gresham previoudly filed grievances and lawsuits against their co-workers. (*Id.*)

Despite those statements to Gresham, Lese and Smith allegedly took Gresham to see the prison dentist, Dr. Austin, but harassed Gresham during the entire undertaking. (*Id.*) Upon arrival to the dental appointment, Dr. Austin, Eagle and an unknown dental assistant allegedly refused to treat Gresham because of his prior grievances and lawsuits. (*Id.*) Gresham says that he, nevertheless, showed Dr.

---

[2] On March 3, 2016, Gresham initiated this lawsuit in federal court regarding issues that occurred in mid-2013. (ECF No. 1.) On June 22, 2016, the Court dismissed this lawsuit because Gresham failed to pay the required filing fees after Gresham was denied the ability to proceed *in forma pauperis*. (ECF No. 11.) On July 11, 2017, the United States Court of Appeals for the Sixth Circuit ordered Gresham's lawsuit to be reopened. (ECF No. 20.)

Austin, Eagle and an unknown dental assistant the lacerations and damage in his mouth, but they still refused to treat him. (*Id.*, PageID.4.) After the second refusal, Lese and Smith then allegedly "snatched" Gresham out of the dental chair, bent his wrists, and slammed his head into the wall as they took him away from the dental appointment. (ECF No. 1, PageID.4.)

Gresham subsequently filed grievances complaining about being refused necessary dental treatment. (*Id.*, PageID.6.) Defendant Alexander allegedly responded to the grievances by telling Gresham that he, Neimisto, and Napel will prevent Gresham from getting his teeth fixed because of all the complaints filed by Gresham in the past. (*Id.*, PageID.9.) Gresham claims that, as a result, Alexander, Niemesto, and Napel were deliberately indifferent to his need for dental care. (*Id.*) Gresham states that Alexander's, Niemesto's, and Napel's conduct amounts to retaliation, in violation of the First Amendment, because their conduct helped induce the denial of his dental treatment. (*Id.*)

On May 31, 2013, during a subsequent visit to the prison dentist, Gresham claims that he was again denied treatment by Rourke, Dr. Austin, and Eagle. (ECF No. 1, PageID.8.)

Below in the table, is a summary of Gresham's claims and a summary of the alleged facts supporting the claims.

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Lese | 8th Amedment Deliberate Indifference | 4/6/2013[3] | Lese was allegedly aware of Gresham's dental pain and deliberately prevented dental care. Also allegedly informed the prison dental staff about Gresham's past complaints and lawsuits. |
| 2 | Lese | 8th Amendment Cruel and Unusual Punishment | 4/6/2013 | Lese is alleged to be part of a "campaign of harrassement," which includes (1) telling Gresham that he won't get his teeth fixed, (2) conspiring with the prison dental staff to deny Gresham dental care, and (3) the physical forced used on Gresham when leaving the alleged dental appointment. |
| 3 | Lese | 8th Amendment Excessive Force | 4/6/2013 | When escorting Gresham away from the dental appointment, Lese and Smith allegedly snatched him from the dental chair, bent his wrists, and banged his head into a wall. |
| 4 | Lese | 1st Amendment Retaliation | 4/6/2013 | Allegedly "conspired" with prison dental employees to deny Gresham dental care because of past grievances and lawsuits filed against MDOC employees. |
| 5 | Lese | 1st Amendment Retaliation | 4/6/2013 | Lese also allegedly adversely affected Gresham by using excessive force when leaving the dental appointment where Austin and others refused to treat Gresham. |
| 6 | Smith | 8th Amendment Deliberate Indifference | 4/6/2013 | Smith was allegedly aware of Gresham's dental pain and deliberately prevented dental care. Also allegedly informed the prison dental staff about Gresham's past complaints and lawsuits. |
| 7 | Smith | 8th Amendment Excessive Force | 4/6/2013 | When escorting Gresham away from the dental appointment, Lese and Smith allegedly snatched him from the dental chair, bent his wrists, and banged his head into a wall. |
| 8 | Smith | 8th Amendment Cruel and Unusual Punishment | 4/6/2013 | Smith is alleged to be part of a "campaign of harrassement," which includes (1) telling Gresham that he won't get his teeth fixed, (2) conspiring with the prison dental staff to deny Gresham dental care, and (3) the |

---

[3] In the Verified Complaint, Gresham does not specifically state a date on which the incidents occurred. (*See* ECF No. 1.) The undersigned uses the incident date that Gresham identified in grievance **MBP-13-04-0754-28A**. (ECF No. 41-4, PageID.153.)

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
|  |  |  |  | physical forced used on Gresham when leaving the alleged dental appointment. |
| 9 | Smith | 1st Amendment Retaliation | 4/6/2013 | Allegedly informed Gresham that he would not allow Gresham to get Gresham's teeth fixed because Gresham filed prior lawsuits and grievances against Smith's coworkers. |
| 10 | Smith | 1st Amendment Retaliation | 4/6/2013 | Smith also allegedly adversely affected Gresham by using excessive force when leaving the dental appointment where Austin and others refused to treat Gresham. |
| 11 | Austin | 8th Amendment Deliberate Indifference | 4/6/2013 | During the dental appointment, as alleged by Gresham, Austin refused to treat Gresham. Refused to treat again after seeing the damage in Gresham's mouth. |
| 12 | Austin | 8th Amendment Deliberate Indifference | 5/31/2013 | During another prison dentist visit, Austin allegedly again refused to treat Gresham despite knowing the pain he was suffering. |
| 13 | Austin | 8th Amendment Cruel and Unusual Punishment | 4/6/2013 | Austin is alleged to be part of a "campaign of harrassement" by refusing to treat Gresham despite seeing the damage inside of Gresham's mouth. |
| 14 | Austin | 1st Amendment Retaliation | 4/6/2013 | Austin allegedly refused to render dental treatment because Austin was aware of the grievances and lawsuits that Gresham filed in the past against MDOC employees. |
| 15 | Eagle | 8th Amendment Deliberate Indifference | 4/6/2013 | During the dental appointment, as alleged by Gresham, Eagle refused to treat Gresham. Refused to treat again after seeing the damage in Gresham's mouth. |
| 16 | Eagle | 8th Amendment Deliberate Indifference | 5/31/2013 | During another prison dentist visit, Eagle allegedly again refused to treat Gresham despite knowing the pain he was suffering. |
| 17 | Eagle | 8th Amendment Cruel and Unusual Punishment | 4/6/2013 | Eagle is alleged to be part of a "campaign of harrassement" by refusing to treat Gresham despite seeing the damage inside of Gresham's mouth. |
| 18 | Eagle | 1st Amendment Retaliation | 4/6/2013 | Eagle allegedly refused to render dental treatment because Austin was aware of the grievances and lawsuits that Gresham filed in the past against MDOC employees. |

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 19 | Unknown Dental Assistant | 8th Amendment Deliberate Indifference | 4/6/2013 | During the dental appointment, as alleged by Gresham, Austin refused to treat Gresham. Refused to treat again after seeing the damage in Gresham's mouth. |
| 20 | Unknown Dental Assistant | 8th Amendment Cruel and Unusual Punishment | 4/6/2013 | Austin is alleged to be part of a "campaign of harrassement" by refusing to treat Gresham despite seeing the damage inside of Gresham's mouth. |
| 21 | Unknown Dental Assistant | 1st Amendment Retaliation | 4/6/2013 | Unknown Dental Assistant allegedly refused to render dental treatment because Austin was aware of the grievances and lawsuits that Gresham filed in the past against MDOC employees. |
| 22 | Alexander | 1st Amendment Retaliation | Unspecified date between 4/2/13 and 4/8/13.[4] | Allegedly utilized his influence to have Gresham's dental care requests denied because Gresham had filed paperwork that would expose MDOC's "correuption." |
| 23 | Alexander | 8th Amendment Deliberate Indifference | Unspecified date between 4/2/13 and 4/8/13. | Alexander was allegedly aware of Gresham's need for dental treatment but failed to respond to the need. |
| 24 | Neimisto | 1st Amendment Retaliation | Unspecified date between 4/2/13 and 4/8/13. | Allegedly utilized his influence to have Gresham's dental care requests denied because Gresham had filed paperwork that would expose MDOC's "correuption." |
| 25 | Neimisto | 8th Amendment Deliberate Indifference | Unspecified date between 4/2/13 and 4/8/13. | Neimisto was allegedly aware of Gresham's need for dental treatment but failed to respond to the need. |
| 26 | Napel | 1st Amendment Retaliation | Unspecified date between 4/2/13 and 4/8/13. | Allegedly utilized his influence to have Gresham's dental care requests denied because Gresham had filed paperwork that would expose MDOC's "correuption." |

---

[4] In the Verified Complaint, Gresham does not give a specific date when Alexander, Neimisto, and Napel allegedly violated Gresham's constitutional right. (ECF No. 1, PageID.9.) In grievance **MBP-13-04-0754-28A**, however, Gresham states that the alleged constitutional violations occurred between April 2 and April 8, 21013. (ECF No. 41-4, PageID.153.)

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 27 | Napel | 8th Amendment Deliberate Indifference | Unspecified date between 4/2/13 and 4/8/13. | Napel was allegedly aware of Gresham's need for dental treatment but failed to respond to the need. |
| 28 | Rourke | 8th Amendment Deliberate Indifference | 5/31/2013 | During another prison dentist visit, Rourke allegedly again refused to treat the Gresham despite knowing the pain he was suffering. |

### III.   Summary of the Relevant Grievances Filed by Plaintiff

Gresham has a history of liberally utilizing the grievance process. (*See* ECF No. 41-5.)  Despite of his liberal use, he filed only two grievances relating to the current matter:  grievances **MBP-13-04-0718-12A1** and **MBP-13-04-0754-28A**. (ECF No. 41-6.)

The actual documents associated with grievance **MBP-13-04-0718-12A1** are not included in the record.  Richard Russell, the Greivance Section Manager with MDOC, provided an affidavit that summarizes MDOC's response to this grievance and the grievance's outcome. (ECF No. 41-6.)  According to Russell, the record shows that this grievance was rejected at Step II for failure to comply with MDOC's grievance procedures. (ECF No. 41-6, PageID.163-164.)  Russell also says that the record shows that Gresham failed to appeal the grievance to Step III. (*Id.*)  In addition, the MDOC Step III Grievance Report includes a short statement regarding the outcome of this grievance.  A copy is shown below.

**MDOC Prisoner Step III Grievance Report**
1/1/2013 to Present

| Prisoner #: | 272603 | Last Name: | Gresham | First Name: | Michael |

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  | ☐ | ☐ | ☐ | ☐ | ☐ |  |

Notes: 7/1/13 Returned to P under cover letter requesting Step I & II documents. SL

7-15-13 grievance MBP-12-04-0743-12b1 rec'd again missing Step I form and response. Also MBP-13-06-01078-08d, MBP-13-03-0553-12a1, MBP-13-04-0850-28f, MBP-13-04-0718-12a1, MBP-13-04-0846-28f, MBP-13-03-0604-14f all missing Step I form and response. Returned to P. 7-19-13 w/instuctions to resubmit

(ECF No. 41-5, PageID.159.) The record before the Court includes no documents that comply with the requirements of Fed. R. Civ. P. 56(c)(4) that show that Gresham resubmitted this grievance.

The second relevant grievance, **MBP-13-04-0754-28A**, was rejected at Step I, as shown below, for being duplicative of grievance **MBP-13-04-0718-12A1**.

8

[Prisoner/Parolee Grievance Form, Michigan Department of Corrections, CSJ-247A, handwritten. Date Received at Step I: 4-10-13. Grievance Identifier highlighted. Name: Mike I. Gresham, Number: 272603, Institution: MBP, Lock Number: 172N&7, Date of Incident: 4/6/13, Today's Date: 4/8/13.

Handwritten grievance narrative describing dental complaints, broken tooth, denied bite guard, retaliation, and listing numerous staff names.

Response: "Your grievance has been rejected per PD-03.02.130 as a duplicate. Identical allegations concerning your dental status is currently being addressed per investigation of grievance identifier MBP13040071812A1 which was received at Step I on 4/08/13. Proper procedure is to file an appeal if resolution is not reached at Step I, not to file additional, similar grievance on one given issue."

Respondent: Glenn Caron, Grievance Coordinator, 4-16-13. Reviewer: K. Niemisto, Deputy Warden, 4/17/13. Date Returned to Grievant: 4-17-13.]

(ECF No. 41-4, PageID.153.)

The record before the Court indicates that Gresham appealed this rejection at Step II, as shown below, but the rejection was upheld at Step II.

9

> LITIGATION
>
> MICHIGAN DEPARTMENT OF CORRECTIONS
> **PRISONER/PAROLEE GRIEVANCE APPEAL FORM**
>
> 4835-4248 5/09
> CSJ-247B
>
> Date Received by Grievance Coordinator at **Step II**: 4-30-13
> Grievance Identifier: MBP1304007541284
>
> Bite Guard, Teeth cleaned
>
> **INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE. The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.
>
> Fixing Broken teeth –
>
> If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: G. Caron
> MBP-GC by 5-3-13. If it is not submitted by this date, it will be considered terminated.
>
> RECEIVED - MDOC
> JUN 07 2013
> Office of Legal Affairs
>
> If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.
>
> | Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | MIKE F. GRESHAM | 272603 | MBP | DIST 18 | 4/6/13 | 4-29-13 |
>
> **STEP II** – Reason for Appeal: The issue is I'm being denied dental treatment medical treatment in retaliation due to my litigation access to courts 0503116 Cit, ese pic smith exrays were also involved in this process for since 2006 I have not been provided dental treatment and I was told by dental staff named it was due to my litigation. I never received a response to (MBP13040071812A1) by Caron Alexander Nemisto et al I need my broken teeth fixed, Bite guard and a cleaning
>
> **STEP II** – Response
>
> A review of your Step II appeal has been completed. Policy Directive 03.02.130 states that a grievance may be rejected if it raises issues that are duplicative of those raised in another grievance filed by the grievant. Your issues regarding your dental has already been addressed in grievance coded MBP13040071812A1. If you are dissatisfied with the response to grievance, you may appeal to the next level of the grievance process as outlined in policy. You may not file grievances which contain duplicative issues. The rejection is supported and your appeal is denied.
>
> Date Received by Step II Respondent: 4-30-13
>
> Robert Napel, Warden
> Respondent's Name (Print)    Respondent's Signature    Date 5-6-13
> Date Returned to Grievant: 5-6-13

(*Id.*, PageID.152.)

Gresham then appealed the rejection of this grievance to Step III. The decision at Step II was upheld at Step III, as shown below.

10

> TO: Gresham, Michael #272603
>
> SUBJECT: Step III Grievance
> MBP-13-04-0754-28a
>
> Your Step III grievance, including any materials included with your appeal from Step II, has been fully reviewed and considered by the Grievance and Appeals Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". The responses you received at Steps I and II reflect that your issues were in fact considered and appropriately responded to at the facility level. As there is no additional information or basis found for relief at Step III, the Step II decision is upheld.
>
> Grievance Specialist: _____
>
> Approval Signature: _____ Date mailed: SEP 2 6 2013
>
> cc: Warden (MBP)
> Prisoner (MBP)

(*Id.*, PageID.151.)

## IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and

admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner

may not be able to obtain the specific type of relief that he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims

13

internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct,

whether a Class I misconduct or a Class II or III misconduct[5], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also

---

[5] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

> prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[6]

## VI. Analysis

Defendants argue Gresham failed to exhaust his administrative remedies in the two grievances that appear to be relevant to this case: **MBP-13-04-0718-12A1** and **MBP-13-04-0754-28A**. They also assert that Gresham failed to name Defendants Rourke and Niemisto in these grievances. In a response that is not supported by a properly executed affidavit, Gresham asserts that the first of these two grievances was properly exhausted. (ECF No. 42.) And in a sur-reply without supporting affidavit, Gresham asserts that he attempted to comply with the grievance procedure, but prison officials failed to respond, thus making the grievance procedure unavailable to him. (ECF No. 44.) The question presented is whether Gresham properly exhausted any of his claims against the Defendants. For the

---

[6] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

reasons stated below, the undersigned respectfully recommends that that the Court find that Gresham did not properly exhaust his claims against the Defendants. [7]

"Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Ngo*, 548 U.S. at 85. Prisoners must exhaust all available administrative remedies and "not just those that meet federal standards." (*Id.*) In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Ngo*, 548 U.S. at 90-91.

Here, Gresham filed two grievances that allege the same issues and neither were properly exhausted. As noted in Section III, copies of the actual documents relating to the first grievance, **MBP-13-04-0718-12A1**, are not available. Defendants explain that MDOC does not retain grievances this old. (ECF No. 41, PageID.115.) Nevertheless, the record before the Court, as shown above, shows that this grievance was denied at Step I and then rejected at Step II. (ECF Nos. 41-5, PageID.159 and 41-6, PageID.163-164.) It appears that Gresham had the option to refile the Step II appeal because the rejection was based on Gresham not including all necessary paperwork. (*Id.*) But Gresham never refiled or appealed the grievance to Step III.

Gresham disputes this conclusion in his response and sur-reply. But Gresham's factual statements are not supported by a declaration that complies with the requirements of 28 U.S.C. § 1746. Accordingly, the undersigned concludes that

---

[7] This Report and Recommendation does not address Defendant's personal involvement issue, because a finding of failure to exhaust all administrative remedies renders the personal involvement issue moot.

17

no genuine issue of material fact exists as to Gresham's failure to exhaust his administrative remedies in **MBP-13-04-0718-12A1**. The undisputed record shows that he did not exhaust his remedies in this grievance.

The second grievance, **MBP-13-04-0754-28A**, is available for review. (ECF No. 41-4.) As shown above, this grievance was rejected for being duplicative of grievance **MBP-13-04-0718-12A1**. (*Id.*) By being duplicative of another grievance, it violated MDOC's grievance policy. MDOC PD 03.02.148 ¶ G(1). Grievances that are rejected for failure to satisfy policy fail to demonstrate proper exhaustion. *Scott v. Amani*, 577 F.3d 642, 647 (6th Cir. 2009). Consequently, the undersigned concludes that no genuine issue of material fact exists as to Gresham's failure to exhaust his administrative remedies in **MBP-13-04-0754-28A**. The record shows that Gresham did not exhaust his administrative remedies in this grievance.

## VII. Recommendation

The undersigned respectfully recommends that this Court dismiss without prejudice all claims against Austin, Eagle, Lese, Smith, Caron, Niemisto, Napel, Alexander, and Rourke based on Gresham's failure to properly exhaust his administrative remedies. If the Court adopts this recommendation, the case will be dismissed.

Dated:  January 30, 2020     /s/ *Maarten Vermaat*
                             MAARTEN VERMAAT
                             U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).