UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL GRESHAM #272603,                    Case No. 2:16-cv-00071

                          Plaintiff,                    Hon.  Hala Y. Jarbou
                                                         U.S. District Judge
        v.

PAMELA AUSTIN, et al.,

                          Defendants.
_____/

**REPORT AND RECOMMENDATION**

## I.  Introduction

        This  Report  and  Recommendation  (R&R)  addresses  a  motion  for  summary
judgment filed by the six remaining defendants.  (ECF No. 60.)  Plaintiff's response
to this motion also sought summary judgment against Dr. Austin, DDS.  (ECF No.
62.)  This R&R addresses both motions for summary judgment.

        State prisoner Michael Gresham filed this civil rights action pursuant to 42
U.S.C. § 1983 on March 11, 2016.  (ECF No. 1.)  His claims related to events at the
Marquette Branch Prison (MBP) in April and May 2013.

        Gresham alleges that he had broken teeth and exposed nerves.  (*Id.*, PageID.3.)
He says he was denied dental care and physically abused for filing grievances and
lawsuits, in violation of the First Amendment, and that the denial of medical care
also violated his rights under the Eighth Amendment.  He also alleges that he was

treated with excessive force, in violation of the Eighth Amendment, and that some defendants conspired to violate his rights.

The remaining Defendants are two dental care providers – Doctor Austin (DDS) and Dental Assistant (DA) Eagle; two Corrections Officers – CO Lese and CO Smith[1]; and two prison supervisors – Warden Napel (now retired), and Deputy Warden Alexander.

Gresham sues all of these Defendants in their official and personal capacities. (*Id.*, PageID.2.)  He seeks compensatory and punitive damages, and an injunction directing prison officials to provide dental care.  (*Id.*, PageID.10.)  His complaint is verified.  (*Id.*)

Three defendants have been dismissed from this case.  They are Grievance Coordinator Caron, Resident Unit Manager Neimisto and Kevin Rourke.  (ECF No. 49.)

Gresham's remaining claims are summarized in the table below.

| Claim # | Defendants[2] | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Lese and Smith | 8th Amendment Deliberate Indifference and Cruel and | 4/2/2013[3] | Defendants were aware of Gresham's dental pain and deliberately prevented dental care. Defendants also allegedly informed the prison dental staff of |

[1]    Defendants' brief (ECF No. 61) identifies these defendants as Corrections Transportation Officer Leece and Sergeant Smith.

[2]    The undersigned summarized the claims in an earlier R&R.  (ECF No. 46.) With this Court's dismissal of three of the original defendants, the undersigned will now utilize a consolidated and renumbered list of claims.

[3]    In the Verified Complaint, Gresham does not specify a date on which these incidents occurred.  (*See* ECF No. 1.)  In an earlier R&R, the undersigned identified April 6, 2013 as the date on which most of the alleged acts took place.  The parties now appear to believe that the correct date is April 2, 2013.

| Claim # | Defendants[2] | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| | | Unusual Punishment | | Gresham's past complaints and lawsuits, and engaged in a campaign of harassment to prevent Gresham from getting dental care. |
| 2 | Lese and Smith | 8th Amendment Excessive Force | 4/2/2013 | When escorting Gresham away from the dental appointment, Lese and Smith allegedly snatched him from the dental chair, bent his wrists, and banged his head into a wall. |
| 3 | Lese and Smith | 1st Amendment Retaliation | 4/2/2013 | Defendants retaliated against Gresham by using excessive force when leaving the dental appointment after Austin and others refused to treat him. |
| 4 | Austin | 8th Amendment Deliberate Indifference and Cruel and Unusual Punishment | 4/2/2013 | During the dental appointment, Austin refused to treat Gresham. Austin again refused to treat after seeing the damage in Gresham's mouth and engaged in a campaign of harassment to prevent Gresham from getting dental care. |
| 5 | Austin | 8th Amendment Deliberate Indifference | 5/31/2013 | During another prison dentist visit, Austin again refused to treat Gresham despite knowing the pain he was suffering. |
| 6 | Austin | 1st Amendment Retaliation | 4/2/2013 | Austin refused to render dental treatment because Austin was aware of the grievances and lawsuits that Gresham filed in the past against MDOC employees. |
| 7 | Eagle | 8th Amendment Deliberate Indifference and Cruel and Unusual Punishment | 4/2/2013 | During the dental appointment, Eagle refused to treat Gresham. Eagle refused to treat again after seeing the damage in Gresham's mouth and engaged in a campaign of harassment to prevent Gresham from getting dental care. |
| 8 | Eagle | 8th Amendment Deliberate Indifference | 5/31/2013 | During another prison dentist visit, Eagle refused to treat Gresham despite knowing the pain he was suffering. |
| 9 | Eagle | 1st Amendment Retaliation | 4/2/2013 | Eagle refused to render dental treatment because Austin made him aware of the grievances and lawsuits that Gresham had filed in the past against MDOC employees. |
| 10 | Alexander and Napel | 1st Amendment Retaliation | Unspecified date between | Defendants utilized their influence to have Gresham's dental care requests denied because Gresham had filed |

3

| Claim # | Defendants[2] | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| | | | 4/2/13 and 4/8/13.[4] | paperwork that would expose MDOC's "corruption." |
| 11 | Alexander and Napel | 8th Amendment Deliberate Indifference | Unspecified date between 4/2/13 and 4/8/13. | Defendants were aware of Gresham's need for dental treatment but failed to respond to the need. |

Defendants raise eight arguments in their motion for summary judgment. First, they argue that they cannot be sued in their official capacities. (ECF No. 61, PageID.271.) The undersigned agrees with this claim.

Second, they argue that Warden Napel and Deputy Warden Alexander are entitled to qualified immunity because they had no personal involvement with Gresham's dental care. (*Id*., PageID.273.) The undersigned agrees that the evidence fails to show that Napel and Alexander had personal involvement in the denial of dental care.

Third, Defendants argue that Gresham failed to exhaust (1) the excessive force claims against Lese and Smith, and (2) any claims related to his May 31, 2013 dental appointment. (*Id*., PageID.277.) The undersigned disagrees with Defendants' first claim, but concludes that Gresham's claims relating to events on May 31 were not exhausted.

---

[4]    In the Verified Complaint, Gresham does not give a specific date when Alexander, Neimisto, and Napel allegedly violated Gresham's constitutional right. (ECF No. 1, PageID.9.)   In grievance **MBP-13-04-0754-28A**, however, Gresham states that the alleged constitutional violations occurred between April 2 and April 8, 2013.  (ECF No. 41-4, PageID.153.)

Fourth, Defendants assert that DA Eagle is entitled to summary judgment because Gresham claims she failed to provide services that were beyond the scope of her job.  (*Id.*, PageID.280.)  The undersigned agrees.

Fifth, Defendants claim that Gresham has failed to allege facts creating a genuine issue of material fact regarding whether Dr. Austin was deliberately indifferent to Gresham's needs.  (*Id.*, PageID.282.)  The undersigned agrees with this argument as well.

Sixth, Defendants assert that Gresham has failed to allege facts creating a genuine issue of material fact regarding whether Lese and Smith used excessive force.  (*Id.*, PageID.291.)   The undersigned disagrees with this argument and concludes that a genuine issue of material fact remains with respect to this claim, which is Claim 2.

Seventh, Defendants claim that Gresham has not shown (1) that Lese and Smith engaged in an adverse action against him, and (2) that Warden Napel and Deputy Warden Alexander also did not engage in some type of adverse action.  (*Id.*, PageID.295.)  The undersigned concludes that no genuine issue of material fact remains regarding whether Lese, Smith, Napel and Alexander retaliated against Gresham by denying him dental care.  But the evidence does show the existence of a genuine issue of material fact with respect to whether Lese and Smith retaliated against Gresham by using excessive force.  Thus, the undersigned concludes that a genuine issue of material fact remains with respect to Claim 3.

Eighth, and finally, Defendants assert there is no evidence of a conspiracy. (*Id.*, PageID.298.)  The undersigned agrees.

If the Court adopts the undersigned's recommendations, Claims 2 and 3 will remain.

## II.   Summary of Factual Allegations

Gresham's claims revolve around his perceived lack of necessary dental care while he was housed at the Marquette Branch Prison (MBP).  Gresham states that, on April 2, 2013, he filed medical kites regarding significant pain in his mouth.[5] (ECF No. 1, PageID.3.)  In response, COs Lese and Smith allegedly came to Gresham to inform him that they would prevent him from getting his teeth fixed because Gresham previously filed grievances and lawsuits against their co-workers.  (*Id.*)

Despite those statements to Gresham, Lese and Smith took Gresham to his dental examination on April 2, 2013, but allegedly harassed Gresham during the entire undertaking.  (*Id.*)  Upon arrival at the dental appointment, Dr. Austin, and DA Eagle allegedly refused to treat Gresham because of his prior grievances and lawsuits.  (*Id.*)  Gresham says that he, nevertheless, showed Dr. Austin, and DA Eagle the lacerations and damage in his mouth, but they still refused to treat him.  (*Id.*, PageID.4.)  After the second refusal, Lese and Smith then allegedly "snatched"

---

[5]      On March 3, 2016, Gresham initiated this lawsuit in federal court regarding issues that occurred in mid-2013.  (ECF No. 1.)  On June 22, 2016, the Court dismissed this lawsuit because Gresham failed to pay the required filing fees after Gresham was denied the ability to proceed *in forma pauperis*. (ECF No. 11.)  On July 11, 2017, the United States Court of Appeals for the Sixth Circuit ordered Gresham's lawsuit to be reopened.  (ECF No. 20.)  On February 28, 2020, the Court dismissed Defendants Rourke and Neimsto without prejudice. (ECF No. 49.)

Gresham out of the dental chair, bent his wrists, and slammed his head into the wall as they took him away from the dental appointment. (ECF No. 1, PageID.4.)

Gresham subsequently filed grievances complaining about being refused dental treatment. (*Id*., PageID.6.) Defendant Alexander allegedly responded to the grievances by telling Gresham that he and Napel would prevent Gresham from getting his teeth fixed because of all the complaints filed by Gresham in the past. (*Id*., PageID.9.) Gresham claims that, as a result, Alexander and Napel were deliberately indifferent to his need for dental care. (*Id*.) Gresham says that Alexander and Napel retaliated against him in violation of the First Amendment, because their conduct helped induce the denial of his dental treatment. (*Id*.)

On May 31, 2013, during a subsequent visit to the prison dentist, Gresham claims that he was again denied treatment by Dr. Austin and DA Eagle. (ECF No. 1, PageID.8.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[6] or whether it is so one-sided that one

---

[6]     Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. All Official Capacity Claims Should be Dismissed (Defendants' 1st argument)

To the extent that Gresham is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment. The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). To the

extent that Gresham seeks money damages from Defendants in their official capacity, that part of his lawsuit is barred by sovereign immunity.[7]

## V.   Exhaustion of Administrative Remedies (Defendant's 3rd argument)

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

---

[7]     "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity."  *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).  Only the second exception is potentially at issue here.  "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law."   *Id.* Plaintiff's request for injunctive relief is moot because his dental issues have been addressed.  (*See*, ECF No.61-2, PageID.318 (deposition of Plaintiff)).

9

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement

"afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737). And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what,

11

when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ T, BB.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶¶ T, FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved."  *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the

grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[8]

For the reasons stated below, the undersigned concludes that COs Lese and Smith are not entitled to summary judgment on grounds that Gresham failed to exhaust his excessive force claims against them. But, the undersigned concludes that all claims related to events on May 31, 2013 should be dismissed without prejudice because Gresham failed to exhaust these claims.

---

[8]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

14

### 1. Defendants Lese and Smith

This Court previously rejected a claim that Lese and Smith were entitled to summary judgment because Gresham failed to exhaust his administrative remedies with respect to his claims against them. (ECF No. 49.)

To review some of pertinent background information, the Court notes that Gresham filed two grievances relating to his claims: grievances **MBP-13-04-0718-12A1** and **MBP-13-04-0754-28A**. (ECF No. 41-6.) The actual documents associated with grievance **MBP-13-04-0718-12A1** are not included in the record. This grievance was rejected and not appealed to Step III. Richard Russell, the Grievance Section Manager with MDOC, provided an affidavit that summarizes MDOC's response to this grievance and the grievance's outcome. (ECF No. 41-6.) According to Russell, the record shows that this grievance was rejected at Step II for failure to comply with MDOC's grievance procedures. (ECF No. 41-6, PageID.163-164.) Russell also says that the record shows that Gresham failed to appeal the grievance to Step III. (*Id*.) In the February 28, 2020, Order Rejecting Report And Recommendation, the Court addressed this grievance stating:

> In his objection, Gresham contends the Court should find that for Grievance 0718-12A1, the grievance process was not available to him and should conclude that he did exhaust his administrative remedies. In the affidavit filed with his objection, Gresham contends the Grievance Coordinator (Caron) refused to send him the documents he needed to file the Step III appeal and the Grievance Administrator (Russell) would not respond to Gresham's requests.
>
> The Court sustains the objection and will reject the R&R. The Court concludes the record does contain evidence to support the conclusion that Caron's actions rendered the grievance process unavailable to Gresham. In the complaint, Gresham alleges that Caron would not give

15

him a copy of the Step I grievance. (PageID.6.)  According to Gresham, Caron refused to provide the document for the purpose of hindering Gresham's ability exhaust his administrative remedies. (*Id.*) Gresham alleged that he never received a response to his first grievance or a copy back.  (PageID.8.)   Gresham signed the complaint and below his signature, he wrote "I declare all is true without perjury 28 U.S.C. § 1746." (PageID.10.)  The Court also notes that in his Step II Appeal of Grievance 0754-28A, which was written in April 2013 well before the complaint was filed, Gresham complained that he never received a response to Grievance 0718-12A1. (ECF No. 41-4 PageID.152.)

The allegations in the complaint are sufficient to defeat the motion for summary judgment.  Because he did not have a copy of the Step I grievance and the response, his appeal was rejected. Resubmitting his appeal would have been futile; Gresham did not have a copy of the Step I form and response. MDOC's motion fails to address Gresham's allegations about Caron's actions.  The omission is curious because the Court previously discussed the implications of Gresham's allegations on his ability to exhaust his administrative remedies.   In the Opinion dismissing Caron as a defendant from this lawsuit, this Court wrote that "[i]f Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action." (ECF No. 27 Opinion at 5 PageID.82.)

(ECF No. 49, PageID.224-225.)

Gresham makes similar allegations by asserting that the grievance process was unavailable due to Grievance Coordinator Caron's actions.   (ECF No. 63, PageID.468.)  In his response to Defendants' motion for summary judgment, Gresham says that he filed a Step I grievance naming Defendants Lese and Smith.  Gresham says that Grievance Coordinator Caron came to Gresham's cell in April of 2013, and stated "he was going to throw away his grievance against Lese and Smith for excessive force and assault because Lese and Smith were his friends and stated you file too many grievances and lawsuits." (ECF No. 62, PageID.464.)  Gresham states that he was never provided with a copy of his grievance and staff confiscated his

16

goldenrod copy when they searched his cell.  (*Id.*)  Without a copy, Gresham says he could not appeal to Step II or Step III.  Gresham says that the grievance process was not available to him to exhaust his claims against Defendants Lese and Smith.  As before, Defendants have not addressed Gresham's claim that the grievance process was unavailable.  In the opinion of the undersigned, a question of fact exists regarding whether Gresham exhausted his administrative remedies against Defendants Lese and Smith because the procedures were unavailable to him based upon Grievance Coordinator Caron's conduct.

### 2.  May 31, 2013, dental appointment

Grievance **MBP-13-04-0754-28A** involved the April 2013 dental appointment. (ECF No. 41-4, PageID.151-153.)  As stated above Gresham claims that grievance **MBP-13-04-0718-12A1** also involved his April 2013 claims against Defendant Lese and Smith, but he contends that he was denied the ability to pursue this grievance by the grievance coordinator.  The record shows that Gresham never filed and exhausted a grievance raising issues that occurred during his May 31, 2013, dental appointment.  In addition, Gresham has not argued that he pursued a grievance through Step III raising issues regarding the May 31, 2013, dental appointment.  In the opinion of the undersigned, Gresham's claims arising out his May 31, 2013, dental appointment – Eighth Amendment claims against Defendants Austin and Eagle for refusing to provide dental treatment (claims 5 and 8) – should be dismissed without prejudice due to his failure to exhaust these claims.

17

## VI.    Analysis of Eighth Amendment Deliberate Indifference Claims Relating to Dental Care (Defendants' 2nd, 3rd, 4th and 5th arguments, and Plaintiff's motion for summary judgment against Dr. Austin)

Gresham's complaint alleges that, on April 2, 2013, Dr. Austin and DA Eagle denied him dental care and a bite guard in violation of the Eighth Amendment. Gresham also says that Defendants Lese, Smith, Alexander and Napel interfered and prevented him from obtaining proper dental treatment.  In response, Gresham moves for summary judgment against Defendant Dr. Austin arguing that the record establishes that he was in unnecessary pain due to his chipped tooth and that he needed a bite guard.  (ECF No. 62, PageID.457.)  Gresham states that the record establishes that Dr. Austin never indicated that his chipped tooth was a cosmetic issue that did not need immediate repair.  (*Id.*)  Gresham further acknowledges that his tooth was temporarily fixed on April 14, 2015, and permanently fixed on January 4, 2017.  (*Id.*)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

18

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that **delay in medical treatment** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's **failure to treat a condition adequately**, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment. However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailer, and the physician's job is to treat illness, not punish the prisoner.

20

> Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

21

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

On March 5, 2013, DA Eagle received Gresham's healthcare requests for dental care for a bite-splint and a chipped tooth, and for a cleaning. (ECF No. 61-4, PageID.366.) Gresham did not state that he was in pain. DA Eagle placed Gresham

on the dental examination list.  (*Id.*)  Gresham was called out to the dental clinic on
April 2, 2013.  (*Id.*, PageId.366.)

Dr. Austin examined Gresham.   (Affidavit, ECF No. 61-7, PageID.387.)
Gresham had a chipped tooth (tooth #7, one tooth to the right of his front tooth) in
the front top of his mouth.[9]  (*Id.*)  Dr. Austin states that she informed Gresham that
the chip was an esthetic or cosmetic issue, without pain, and the dentin of the tooth
was not exposed.  (*Id.*)  Dr. Austin opined that a crown was required to fix the tooth,
but that it was not medically necessary at that time.  (*Id.*)  Any treatment of the chip
would require removal of the natural enamel which could not be replaced.  (*Id.*)  Dr.
Austin felt that removal of the natural enamel simply to fix a cosmetic issue was not
advisable.  (*Id.*)   Dr. Austin noted that Gresham did not need a bite guard because
his teeth fit together perfectly, and that he had a prominent cuspid rise.  (*Id.*,
PageID.389.)  A prominent cuspid rise meant that Gresham's teeth were pointed and
indicated that he did not grind his teeth.  (*Id.*)  In addition, his Temporal Mandibular
Joint was within normal limits.  (*Id.*)  For these two reasons, Dr. Austin found no
clinical reason for Gresham to have a bite guard.  (*Id.*)  Also, Dr. Austin noted that
Gresham had had a bite guard since May of 2012, and prison policy allowed a
replacement every five years.  (*Id.*)  Dr. Austin's notes explain her findings and
establish that Gresham had a full examination and treatment.  Gresham disagrees

---

[9]      Gresham acknowledges in his affidavit that he was examined by Dr. Austin.
(ECF No. 63, PageID.467.)

23

with Dr. Austin's medical judgment.  Notes from the April 2 examination are show

below.

| 04/02/13 | Austin, DDS Pamela | | Text Note | Exam - Soft Tissue<br>Updated Health History.<br>Blood Pressure 151/100, Pulse 66<br>TMJ findings:  WNL<br>Oral cancer screening found soft<br>tissue<br>to be WNL<br>Bite class is Class I occlusion<br>prominent cuspid rises.<br>Hygiene appears to be poor<br>Calculus findings:  moderate<br>Perio findings:  mild/reviewed<br>radiographs and bone loss<br>Reviewed x-rays<br>Oral Hygiene Instruction/spend time<br>brushing and flossing<br>Patient stated he has a chipped tooth.<br>Discussed that it is an incisal<br>occluding with lower and would need<br>a crown due to minimal retention.  It<br>is also an esthetic and we don't do<br>that here.  No exposed dentin.<br>Discussed policy on Bite guards also.<br>There needs to be a diagnosis by law<br>before any treatment.  He has had<br>several in the past and policy is<br>specific on time frame and care. |
| 04/02/13 | Austin, DDS Pamela | 00104 | Completed | Health History |
| 04/02/13 | Austin, DDS Pamela | 041 | Completed | Treatment Plan |
| 04/02/13 | Austin, DDS Pamela | | Text Note | Treatment plan<br>Patient has the following Treatment<br>plan<br>Planned treatment:<br>prophy |
| 04/02/13 | Austin, DDS Pamela | 0028 | Completed | BITEWINGS-TWO FILMS |

(ECF No. 61-3, PageID.337.)

Dr. Austin examined Gresham again on May 31, 2013.[10]  (*Id.*)  Dr. Austin was

more concerned about Gresham's upper right front tooth, because it was loose, than

his chipped tooth.  Dr. Austin took an x-ray of Gresham's teeth and noted that tooth

---

[10]     On May 28, 2013, DA Eagle received a second health care request from
Gresham after his previous April 2, 2013, examination, and scheduled a cleaning.
(ECF No. 61-4, PageID.366.)   Gresham claimed that his chipped tooth was now
causing pain.  DA Eagle scheduled Gresham for an urgent examination for May 31,
2013.  (*Id.*)

#7 was sound, but that tooth #8 (right upper front tooth) was loose due to periodontal disease.  (*Id*.)  Dr. Austin advised Gresham that brushing and flossing every day was the best treatment for his loose tooth and that if it did not tighten up, he would need a root canal or extraction.  (*Id*., PageID.390-391.)  A copy of Dr. Austin's treatment notes for May 31 is shown below.

| 05/31/13 | Austin, DDS Pamela | 0086 | Completed | SINGLE PERIAPICAL X-RAY | 7 |
| 05/31/13 | Austin, DDS Pamela | 0013 | Completed | EMERGENCY ORAL EXAM | |
| 05/31/13 | Austin, DDS Pamela | | Text Note | Emergency Exam Note<br>Reviewed health history.<br>Blood Pressure 128/81, Pulse 67<br>Chief complaint:  chipped tooth  &<br>something with the next tooth.<br>Exam reveals:  #7 incisal chip<br>discussed poor retention at last visit.<br>#8 discoloring and is class II<br>mobility.<br>DIAGNOSIS:  History of trauma #7<br>and #8 radiograph reveals beginning<br>resorption.<br>TREATMENT: Discussed with<br>patient that we want that tooth to<br>tighten up and we will keep checking<br>it for now.  Tooth can either tighten<br>up or we may need to treat with RCT<br>or ext. | |
| 05/31/13 | Austin, DDS Pamela | 00104 | Completed | Health History | |

(ECF No. 61-3, PageID.338.)

On June 28, 2013, Dr. Austin responded to Gresham's request for a bite guard by informing him he did not qualify for a bite guard under prison policy.[11]  (*Id*., PageID.391.)  A copy of Dr. Austin's treatment notes is attached below.

---

[11]     Defendant Eagle attests that bite-splints were replaced every five years under the prison denture policy.  OP 04.06.150E (fabrication of complete or partial dentures) (ECF No. 61-4, PageID.367; ECF No. 61-8, PageID.397.)  Defendant Eagle further attests that bite-splints are no longer provided at MDOC prisons under Policy Directive 04.06.150 ¶ N.  (ECF No. 61-4, PageID.367; ECF No. 61-11, PageID.415.)

| 06/28/13 | Austin, DDS Pamela | 0004 | Completed | S NOTE KITE 2 |
| 06/28/13 | Austin, DDS Pamela | | Text Note | S:  request<br>HCR MBP/BC<br>Patient requested: bite guard |
| 06/28/13 | Austin, DDS Pamela | | Text Note | RV<br>RV -> Per policy a bite guard is<br>evaluated once every 5 years & yours<br>was delivered 5-22-12.<br>Please focus on your brushing and<br>flossing as we discussed your<br>periodontal health at your last |

(ECF No. 61-3, PageID.338.)

Dr. Austin notes that Gresham had tooth #7 restored on April 14, 2015, and again on January 4, 2017.  (*Id*.)  At that time, Gresham's tooth received a filling, but when she examined Gresham in 2013, his tooth did not require a filling.  (*Id*.)   Dr. Austin notes that this indicates Gresham's tooth had changed some time after her examination in 2013.  (*Id*.)

In the opinion of the undersigned, the record establishes that Gresham had full dental examinations including x-rays on April 2, 2013, and again on May 31, 2013.  Gresham has failed to establish that he was denied dental examinations and treatment on those days.  Gresham argues that Dr. Austin was wrong in failing to repair his cracked tooth and by not providing him a new bite guard.  Gresham disagrees with Dr. Austin's diagnosis and the treatment that he received.  As stated above, when the dispute is over the adequacy of the treatment received, the federal courts cannot Constitutionalize state law claims that may support negligence. *Westlake*, 537 F.2d at 860 n.5.  Here, the record establishes that Dr. Austin provided an examination, x-rays, and her expert opinion and advice.   Gresham simply disagrees with her diagnosis, opinion, and advice.  In addition, Gresham has failed to place verifying medical evidence in the record that could establish that he suffered a

26

detrimental effect as a result of Dr. Austin's failure to take action to restore his cracked tooth or to provide him with a bite guard in 2013.  It is respectfully, recommended that the Court dismiss Gresham's Eighth Amendment claims – whether described by Gresham as deliberate indifference or cruel and unusual punishment – based upon his claims of denial of dental care against Defendants Austin, Eagle, Lese, Smith, Napel, and Alexander. (Claims 1, 4, 7, and 11.[12])

In addition, DA Eagle, CO Lese, CO Smith, Warden Napel, and Deputy Warden Alexander were not involved in Gresham's dental diagnoses and, as a result, could not have violated his Eighth Amendment rights with respect to his dental care.

First, Gresham named Defendant Eagle because she was his DA.  As a DA, Defendant Eagle provides chair side assistance, sterilized instruments, took x-rays, logged treatment data, maintained records, answered the telephone, scheduled appointments, triaged dental requests, and ordered supplies.  (ECF No. 61-4, PageID.364.)  Defendant Eagle twice placed Gresham on the dental examination list after he requested dental care and informed him that he was not eligible for a bite-splint.  (ECF No. 61-4, PageID.365-366.)  Defendant Eagle did not examine Gresham or make the recommended treatment plan.  *See*, *Sealey v. Rosebock*, 2:18-cv-168, 2020 WL 35488551 at *6 (W.D. Mich., May 22, 2020) R&R adopted 2020 WL 3547586 (W.D.

---

[12]    Gresham requested injunctive relief by asking the Court to order Defendants to repair his tooth and to provide him with a bite guard.  (ECF No. 1, PageID.10.) Gresham's tooth has been repaired and he has no current dental issues.  In addition, Gresham can purchase a sports mouthguard for $1.50 from the prisoner store.  (ECF No. 61-12, PageID.426.)   MDOC Dental services does not provide bite guards to prisoners (ECF No. 61-4, PageID.367) and, as stated, Gresham has not established a medically verifiable need for a bite guard.  (ECF No. 61-7, PageID.389.)

Mich., June 30, 2020) (dental assistant who scheduled exam and provided chair-side assistance is entitled to summary judgment because she was not involved in the examination and treatment of chipped tooth.)   In the opinion of the undersigned, Defendant Eagle is entitled to summary judgment because she was not involved in the dental examination and alleged denial of dental treatment.

Second, Gresham alleges that CO Lese and CO Smith were involved in the alleged denial of dental treatment on April 2, 2013.   Officer Lese and Sergeant Smith escorted Gresham to his dental appointment on April 2, 2013.   These COs are not qualified to provide dental care and were not involved in Gresham's dental examination or treatment.  (ECF No. 61-5, PageID.373 (CO Lese's affidavit); ECF No. 61-6, PageID.380 (CO Smith's affidavit).)   And, as noted above, the records clearly show that Gresham received dental care on those dates.

Third, Gresham says that Deputy Warden Alexander and Warden Napel told him while they were making rounds that they would make sure that he never received dental care.   Deputy Warden Alexander and Warden Napel deny ever telling Gresham that he would never get dental care and state that if he had asked them about dental care, they would have advised him to send a health care request by kite. (ECF No. 61-10, PageID.410; ECF No. 61-9, PageID.403-404.)   Gresham did make specific requests for dental care by kite, and he received dental care each time he made a kite request for dental care.  (ECF No. 61-3, PageID.335-352.)

In the opinion of the undersigned, Defendants Lese, Smith, Alexander, and Napel[13] are entitled to summary judgment on Gresham's denial of dental care claims because they had no involvement in Gresham's dental examinations, the alleged denial of dental treatment for his cracked tooth, or the denial of a bite guard. And, as noted above, the records clearly show that Gresham received dental care on those dates. For these same reasons, Mr. Gresham is not entitled to summary judgment against Dr. Austin.

### VII.   Eighth Amendment – Excessive force claim (Defendants' 6th argument)

Gresham says that Defendants Lese and Smith used excessive force against him during his April 2, 2013, dental examination. Gresham described what happened during his deposition:

> I was kind of roughed up a little bit by Lese and Smith, like, grabbed -- forced me out of the chair, the dental chair.  And as I was leaving -- I can't exactly remember who it was, but they kind of pushed me into a wall and my head, like, hit the side of the wall or whatever.  And then they escorted me back to my cell.

(ECF No. 61-2, PageID.314.)[14]

---

[13]    Defendants Napel and Alexander cannot be sued solely because of their supervisory authority as Warden and Deputy Warden.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 2011).  Nor can they be sued due to their roles in responding to grievances.  *Id*.

[14]    Gresham states in his complaint that Defendant Lese and Smith "snatched" him from the dental chair "bent his wrists" causing loss of feeling and "slamming Gresham's face or head into the wall of the dental office causing his nose to bust and bleed."  (ECF No. 1, PageID.5.)  Grehsam complained of permanent nerve damage

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

The Court notes that the "absence of serious injury" is relevant to the Eighth Amendment inquiry.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (*citing Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." [*Hudson*, at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)].  The extent of injury may also provide some indication of the amount of force applied.  As we stated in *Hudson,*

---

and loss of feeling in his hands and wrist, and permanent pain and breathing complications due to his broken nose.  (*Id.*)

> not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.*, at 9–10 (some internal quotation marks omitted). An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.*, at 9 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

*Wilkins*, 559 U.S. at 37–38. The Court added that "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

In *Wilkins*, the plaintiff alleged that he was "punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation.'" *Id.* at 38. The assault allegedly left the plaintiff with a bruised heel, back pain, hypertension, migraine headaches, dizziness, depression, panic attacks, and nightmares. *Id.* at 35. The Court held that given the allegations regarding the nature of the assault, the district court erred in dismissing the plaintiff's complaint on the basis that his injuries were "de minimis." The Court remanded the case for further proceedings regarding whether the defendant's use of force was malicious and sadistic. *Id.* at 39.

Both Defendants Lese and Smith deny that they used force while escorting Gresham from his April 2, 2013, dental examination. Gresham alleged in his verified complaint that he suffers from permanent injury to his wrists and that he has permanent issues with his breathing because he was slammed into the wall by Defendants. Although, Gresham admits that he does not know whether Lese or

Smith initiated the conduct to remove him from the dental chair, he has asserted that both Defendants slammed his head into the dental office wall.  Most importantly, Gresham's description of Defendants' action in his complaint could rise to malicious or sadistic conduct and, if true, could support an Eighth Amendment excessive force violation.  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.  Gresham's complaint states:

> Defendant Austin, Eagle/Jane Doe, Lese, smith conspired to And did violate Greshams 8TH Amendment to Be Free From Assault And his 8TH Amendment to Be Free From Excessive Force when Austin & Eagle/Jane Doe told Plaintiff to Get outof here And told Smith & Lese to teach Gresham A Lesson hurt him And Lese & smith Snatched Plaintiff out dental chair bent his wrists in his Left & right hand causing him to lose the Feeling in his hands Them And some Permanently And Slamming Greshams Face head into The wall of The Dental office causing his Nose to Bust & bleed (1) There was No Need For Force (2) The amount of Force used wasNot reasonable and was excessive (3) There did Not Appear to be a Need of Force to Restrain (4) The Defendants did Not use as little ForAs Necessary (5) Gresham has Permanent nerve damage and loss of Feelings in his hands wrists hAs Permanent Pain and Breathing comPlications Through his Nose as his Nose was busted And has Nightmares Mental sufferance about being Conspired to be Assaulted & Assaulted
>
> (5) SEE Hudson v. McMillian 503 U.S. 1 (1992)

(ECF No. 1, PageID.5.)

In the opinion of the undersigned, an issue of material fact exists regarding whether Defendants Lese and Smith bent Gresham's wrists causing permanent nerve damage and slammed his head into the wall causing him to break his nose and permanently damage his ability to breathe.  (Claim 2).

## VIII.  Retaliation (Defendants' 7th argument)

Gresham asserts that Defendants denied him dental care and treatment in retaliation for his past grievance and lawsuits.  Defendants argue that Gresham's retaliation claims fail because he suffered no adverse action.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id*.  The Sixth Circuit has repeatedly held that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'"  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)).  "If the grievances are frivolous, however, this right is not protected."  *Id*.  "Abusive or manipulative use of a grievance system [is] not…protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal."  *Griffin v. Berghuis*, 563 Fed. App'x. 411, 416 (6th Cir. 2014) (citing *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032,

1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429

U.S. 274, 287 (1977)).

> However, the Sixth Circuit has employed a burden-shifting approach:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

For purposes of this motion, Defendants concede that Gresham's past lawsuits

and grievances could establish protected conduct.   (ECF No. 61, PageID.296.)

Gresham argues that Defendants Lese, Smith, Alexander, and Napel retaliated

against him by denying him access to dental treatment.  Defendants Lese and Smith

took Gresham to his dental examination on April 2, 2013, but were not involved in

the examination.  Similarly, Napel and Alexander were not involved in Gresham's

dental examinations.  Dr. Austin and DA Eagle provided Gresham with two dental

examinations on April 2, 2013, and on May 31, 2013.   The medical records

demonstrate that Dr. Austin provided Gresham with full dental examinations that

involved taking x-rays, a diagnoses, and treatment.  Gresham also had his teeth

cleaned.  Gresham simply disagrees with Dr. Austin's treatment plan and diagnosis.

The evidence establishes that Gresham received treatment despite his claim

that he did not.  Gresham's claim that he was denied treatment is not supported by

the dental record.  Gresham received dental care and treatment in early April and

again in late May of 2013.  In the opinion of the undersigned, Gresham has failed to

establish that adverse action was taken against him based upon the dental record that is before the Court.  Gresham's simple disagreement with the professional opinion and care that he received from Dr. Austin is insufficient to establish adverse action for purposes of proving a retaliation claim.  (Claims 6, 9, and 10).

However, as noted above, a genuine issue of fact remains regarding Gresham's excessive force claims.  And Gresham's claims regarding excessive force by Lese and Smith would also constitute adverse action for the purposes of his retaliation claims against them.  Thus, Gresham's Claim 3 should survive summary judgment.

## IX.     Conspiracy (Defendants' 8th argument)

Gresham alleges that Defendants engaged in a conspiracy to violate his Eighth Amendment and First Amendment rights by denying him a dental examination and treatment.  (ECF No. 1, PageID.5, 7.)   A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007) (recognizing that allegations of conspiracy must be supported by

allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one).

Gresham has failed to specifically allege facts to support his conspiracy claims. Most importantly, the dental records shows that Gresham was provided two complete dental examinations and that Defendants did not engage in a conspiracy to deny him dental treatment.  In the opinion of the undersigned, it is respectfully recommended that the Court dismiss Gresham's conspiracy claims.

## X.  Recommendation

The undersigned respectfully recommends that the Court deny Gresham's motion for summary judgment (ECF No. 62) and grant in part and deny in part Defendants' motion for summary judgment (ECF No. 60) as follows:

1.      Dismiss Gresham's First and Eighth Amendment claims against Dr. Austin and DA Eagle arising on May 31, 2013, without prejudice, due to Gresham's failure to exhaust his administrative remedies.  (Claims 5 and 8.)

2.      Dismiss Gresham's First and Eighth Amendment and conspiracy claims against all Defendants for denying him a dental examination and treatment. (Claims 1, 4, 6, 7, 9, 10, and 11.)

3.      Dismiss Gresham's official capacity claims against all Defendants.

If the Court adopts this recommendation, the following claims will remain:

1.      Gresham's claim that COs Lese and Smith used excessive force against him on April 2, 2013.  (Claim 2.)

2.      Gresham's claim that COs Lese and Smith retaliated against him by using excessive force against him on April 2, 2013.  (Claim 3.)

Dated:  July 13, 2021                          /s/ *Maarten Vermaat*
                                                        MAARTEN VERMAAT
                                                        U. S. MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).