UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL GRESHAM,

    Plaintiff,

v.

    Case No. 2:16-cv-71

    Hon. Hala Y. Jarbou

PAMELA AUSTIN, et al.,

    Defendants.
_____/

# ORDER

Proceeding *in forma pauperis*, Plaintiff Michael Gresham, a prisoner with the Michigan Department of Corrections, brings a civil rights action under 42 U.S.C. § 1983. Six Defendants remain: (1) Doctor Austin; (2) Dental Assistant Eagle; (3) Corrections Officer Leece; (4) Corrections Officer Smith; (5) Warden Napel; and (6) Deputy Warden Alexander. Defendants were sued both in their individual and official capacities. They all jointly moved for summary judgment. (ECF No. 60.) Gresham opposed the motion, and in his opposition brief requested summary judgment against Austin. (ECF No. 62.)

The matter was referred to a magistrate judge, who produced a Report and Recommendation that the Court partially grant Defendants' motion and deny Gresham's motion. (R&R, ECF No. 69.) The R&R was duly served on all parties. Defendants did not object. The Court now addresses Gresham's timely objections to the R&R (ECF No. 71)[1] and Defendants' response to those objections. (ECF No. 73.)

---

[1] Gresham's objections also request appointment of counsel. (Pl.'s Objs., PageID.529.) However, contemporaneous with the objections, Gresham filed a separate motion for appointment of counsel. (ECF No. 70.) The Court will construe the request for counsel in the R&R as Gresham urging the Court to grant his motion to appoint counsel. That motion has since been denied. (ECF No. 72.)

## I. Background

Gresham claims that Austin and Eagle refused to provide him dental care because of his propensity to file grievances and lawsuits against prison staff, and that the other Defendants supported Austin and Eagle's actions through excessive force, threatened retaliation, and subterfuge. (*See* R&R 6-7.)

Gresham submitted a medical kite on April 2, 2013, claiming that he had a chipped tooth causing him significant pain, and that he also grinded his teeth at night, also causing pain, which required a bite guard. (*Id.* at 6.) Leece and Smith came to Gresham's cell to escort him to Austin and Eagle. (*Id.*) But first, they allegedly told Gresham that they would "prevent him from getting his teeth fixed because . . . [of] previously filed grievances and lawsuits against their co-workers." (*Id.*)

Once in the dental chair, Austin and Eagle, also citing Gresham's troublemaking, allegedly refused to treat his teeth. (*Id.*) Gresham says Leece and Smith piped in, commenting that he was "trying to expose us . . . for our corrupt practices that the public will never find out [about] because we'll cover it up like we're going to cover up your dental denial." (Compl., ECF No. 1, PageID.4-5.)[2] Nevertheless, Gresham showed "the lacerations and damage in his mouth, but [Austin and Eagle] still refused to treat him." (R&R 6.) Leece and Smith then allegedly "'snatched' Gresham out of the dental chair, bent his wrists, and slammed his head into the wall as they took him away from the dental appointment." (*Id.*) Records of the appointment made by Austin sharply contradict Gresham's version of events, but Gresham claims these records are

---

[2] Gresham submitted a verified complaint. Verified complaints are akin to affidavits and the allegations therein are treated as evidence that may be considered on a motion for summary judgment.

2

falsified and that Austin said he would write that Gresham "didn't need dental treatment even if [he] did." (Gresham Aff. ¶ 2, ECF No. 63.)

Gresham filed grievances "complaining about being refused dental treatment." (R&R 7.) Warden Napel and Deputy Warden Alexander allegedly came to Gresham's cell to say that they would "prevent Gresham from getting his teeth fixed because of all the complaints filed by Gresham in the past." (*Id.*) Gresham had another visit with Austin and Eagle on May 31, 2013, where they again refused to treat him. (*Id.*)

## II. Standards

### A. Objections to R&Rs

Under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court must conduct de novo review of those portions of the R&R to which objections have been made. Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

### B. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted).

3

A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289).

In considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249.

### III. Objections

The R&R identifies eleven claims in Gresham's complaint and recommends summary judgment on all but two: Claims 2 and 3 against Leece and Smith. (R&R 6.) The R&R also recommends dismissal of all claims against all Defendants brought in their official capacities. (*Id.* at 8.) Finally, the R&R concludes that there is no evidence of a conspiracy between the Defendants. Gresham "object[s] to the entire Report and Recommendation, but more specifically [to the R&R's recommendations for] Claims 4, 5, 6, 7, 8, [and] 9." (Pl.'s Objs. ¶ 1.) He also objects to the recommended disposition of Claims 10 and 11. (*Id.* ¶ 3.)

"[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 308 (6th Cir. 1995) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). Along these lines, the Court concludes that Gresham has not properly

4

objected to the recommended disposition of Claims 1 and 7-9.[3] Gresham does not address Claim 1 in his objections. He does object on Claims 7-9, but those Claims pertain to Defendant Eagle alone. Eagle is not mentioned a single time in Gresham's objections, and, bearing in mind that *pro se* filings should be construed indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court does not find anything in Gresham's objections that sufficiently relate to Claims 7-9. Finally, he does not object to dismissal of all official-capacity claims.

The Court interprets Gresham's objections differently than Defendants do in their response. Gresham's objections are numbered 1-4, with paragraph 1 containing overly general objections while also "more specifically" objecting to Claims 4-9 and contending that Austin knew he was in pain from his tooth. (Pl.'s Objs. ¶ 1.) The Court sees paragraph 2 as an expansion of Gresham's objections regarding Claims 4-6, each of which relate to Austin. (*See id.* ¶ 2.) Hence, in the Court's view, paragraphs 1 and 2 form a single objection. Defendants treat the two paragraphs as separate objections. (*See* Defs.' Resp. 1-2.) The Court believes this mischaracterizes the nature of paragraph 2, which is more about Austin's alleged lies and record falsification than, as Defendants put it, Gresham's "simpl[e] disagree[ment] with Dr. Austin's professional opinion." (*Id.* at 2.) The Court will now review Gresham's properly raised objections, treating paragraphs 1 and 2 as a single objection.

**A. Claims 4-6**

Claims 4-6 are brought against Austin. Claim 4 alleges deliberate indifference for his refusal to treat Gresham on April 2, 2013, while Claim 6 alleges retaliation by Austin for refusing to provide treatment because of Gresham's grievances and lawsuits. (R&R 3.) Claim 5 asserts

---

[3] The Court will also assume that, in objecting to "the entire Report and Recommendation," Gresham does not intend to dispute the R&R's recommendation against granting Defendants' motion for summary judgment on Claims 2 and 3.

5

deliberate indifference for Austin's alleged second refusal to provide treatment on May 31, 2013. (*Id.*)

The R&R determined that Gresham had failed to muster evidence sufficient to satisfy either the objective or subjective prong of an Eighth Amendment deliberate indifference claim. (*Id.* at 26-27.) The R&R found that "the record establishes that Gresham had full dental examinations including x-rays on April 2, 2013, and again on May 31, 2013" and concluded that "Gresham has failed to establish that he was denied dental examinations and treatment on those days." (*Id.* at 26.) Moreover, the R&R stated that Gresham simply had a non-actionable disagreement with the treatment Austin provided. (*Id.*) And because Austin *did* provide treatment, he *did not* retaliate against Gresham. (*Id.* at 34-35.)

Gresham contends that the dental records on which the R&R based its conclusion were falsified and that Austin is lying. (Pl.'s Objs., PageID.528-529.) It appears that the R&R disregards Gresham's statements in his verified complaint (ECF No. 1) and affidavit (ECF No. 63), where he claims Austin falsified dental records to make it appear as if he examined and treated Gresham when he did not. These statements directly contradict the records and affidavit presented by Austin. Under Gresham's version of events, he had severe teeth problems and lacerations in his mouth. Austin refused to treat these maladies because of Gresham's past grievances and lawsuits.

Unfortunately, the R&R impermissibly resolved a factual dispute in concluding that Gresham was, in fact, examined and that he received some degree of dental care from Austin. Defendants' response commits the same error. (Defs.' Resp. 2-3.) Should a jury find Gresham's testimony more credible, they could reasonably find that he suffered from a sufficiently serious condition that Austin knew about but refused to treat. A reasonable jury could also find that Austin

6

refused to provide treatment because of Gresham's grievances and lawsuits against other prison staff.  Consequently, there is a genuine dispute of material fact and summary judgment cannot be granted on Claims 4 and 6.  For the same reason, Gresham's own motion for summary judgment on these claims will be denied.

Gresham's statements might also be enough to support his second deliberate indifference claim in Claim 5.  However, Claim 5 stems from an interaction that allegedly took place on May 31, 2013.  (R&R 3.)  The R&R found that Gresham failed to exhaust this claim through the grievance process.  (*Id.* at 17.)  Gresham does not adequately object to this conclusion.  Nor could he.  In his verified complaint and affidavit, Gresham claims that prison staff frustrated his efforts to completely grieve the events on April 2.  (*See* Compl., PageID.6; Gresham Aff. ¶¶ 4-5.)  He makes no similar claim regarding his attempt to grieve the events of May 31.  Summary judgment will be granted on Claim 5 for failure to exhaust.

### B. Claims 10-11

Claim 10 asserts that Alexander and Napel retaliated against Gresham by using "their influence to have Gresham's dental care requests denied because Gresham" filed grievances and lawsuits, while Claim 11 claims that this same conduct amounted to deliberate indifference.  (R&R 3.)  The R&R recommends entering summary judgment against Gresham on these claims because "Napel and Alexander were not involved in Gresham's dental examinations."  (*Id.* at 34.)  But this conclusion is again based on the R&R's finding that Gresham did actually receive dental care.  (*Id.*)

Gresham contends that Napel and Alexander were aware of his need for dental treatment and that they "used their positions of authority to influence Austin to falsify dental records and deny . . . dental treatment."  (Pl.'s Objs., PageID.529.)  In his affidavit, Gresham asserts that Napel and Alexander came to his cell and said "they would continue to prevent [Gresham] from receiving

7

dental treatment because of the lawsuits and grievances [he] filed against [prison] staff." (Gresham Aff. ¶ 8.)  This alleged statement must also be read in light of Gresham's contention that he did not receive any dental care, contrary to what dental records indicate.

If Gresham's account is true, Napel and Alexander's joint threat to withhold treatment could "deter a person of ordinary firmness from engaging in protected activity." *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (citing *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003)); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) ("[S]ince there is no justification for harassing people for exercising their constitutional rights [the deterrent effect] need not be great in order to be actionable." (citation and internal quotation marks omitted)).  Defendants' respond that "Napel and Alexander did not retaliate against Gresham as they took no adverse action against him." (Defs.' Resp. 4.)  But threats are enough, and Gresham says he was threatened.  Thus, there is a genuine dispute of material fact about whether Napel and Alexander retaliated against Gresham and summary judgment on Claim 10 should be denied.

Gresham also claims that, during his interaction with Napel and Alexander, he told them about his dental problems and the pain he was suffering. (Gresham Aff. ¶ 8.)  Again, this comes down to a credibility issue.  If a jury believed Gresham's testimony, they could reasonably conclude that Gresham had an objectively serious medical condition and that Napel and Alexander knew of this condition but nevertheless intervened to prevent any treatment from occurring.  Summary judgment on Claim 11 is therefore inappropriate.

Accordingly,

**IT IS ORDERED** that the R&R (ECF No. 69) is **APPROVED** and **ADOPTED in part** and **REJECTED in part**.  The R&R is adopted with respect to its recommendations regarding

8

Claims 1-3, 5, and 7-9, Plaintiff's official capacity claims and conspiracy claims, and Plaintiff's motion for summary judgment. The R&R is rejected in all other respects.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (ECF No. 60) is **GRANTED in part** and **DENIED in part**. The motion is denied with respect to Claims 2-6 but is granted in all other respects.

**IT IS FURTHER ORDERED** that Claims 1 and 7-9, all official-capacity claims, and all conspiracy claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Claim 5 is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (ECF No. 62) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Eagle is **DISMISSED**.

Claims 2, 3, 4, 6, 10, and 11 and Defendants Leece, Smith, Austin, Napel, and Alexander remain in this action.

Dated:  August 6, 2021               /s/ Hala Y. Jarbou
                                     HALA Y. JARBOU
                                     UNITED STATES DISTRICT JUDGE